# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN BOOKER,                                    :
                                                :       CIVIL ACTION
               Plaintiff,             :
                                                :
   v.                                           :
                                                :       NO.  12-402
CITY OF PHILADELPHIA, et al.,                   :
                                                :
               Defendants.            :

## MEMORANDUM

STENGEL, J.                                              March 29, 2017

      John Booker filed this civil rights action against the City of Philadelphia and four of the police officers who were involved in his arrest, obtaining a search warrant for the vehicle he was driving at the time of his arrest, and completing paperwork subsequent to his arrest.  The City of Philadelphia, along with Detective Sean Walsh and Sergeant Thomas Walsh, filed a motion for summary judgment.[1]  The defendants argue that the plaintiff's failure to train claim fails because he cannot show that the City of Philadelphia acted with deliberate indifference or that its police training caused the alleged constitutional violations, and that the claims against Detective Walsh and Sergeant Walsh fail as a matter of law.  I will deny the defendants' motion for summary judgment with respect to the failure to train claim against the City of Philadelphia.  I will, however, grant the defendants' motion for summary judgment with respect to all other claims against the City and all claims against Detective Sean Walsh and Sergeant Thomas Walsh.

---

[1] The other two police officers named as defendants, Sean Alivera and Christopher Luciano, are not parties to the motion for summary judgment.  I therefore do not address the claims, or the sufficiency of the record evidence in support of those claims, against Alivera or Luciano.

## I.     FACTUAL BACKGROUND

On January 29, 2010, Philadelphia police officers received a radio call stating that a black male driving a newer white vehicle with license plate FXC0006 had just used a gun to commit a robbery at 3300 North Front Street.  (Defs.' Statement of Undisputed Material Facts ("DSUMF") ¶ 1.)  Three to five minutes after hearing the radio call, Officer Richard Prior saw the plaintiff, an African American male, driving the vehicle.  (Id. ¶ 2.)  At that time, the vehicle was five blocks from the scene of the robbery.  (Id. ¶ 3.)

After he pulled over the plaintiff's vehicle, Officer Prior conducted a frisk for officer safety and felt a bulge on the plaintiff's ankle.  (Id. ¶¶ 3–4; Pl.'s Statement of Undisputed Material Facts ("PSUMF") ¶ 3.)  Officer Prior then lifted the plaintiff's pant leg to investigate the bulge and saw that it was an ankle monitor.[2]  (DSUMF ¶ 4–5.)  Officer Prior testified at his deposition that it was then that he saw marijuana inside the plaintiff's shoe.  (DSUMF ¶ 5 (citing Deposition of Richard Prior, June 17, 2016 ("Prior Dep.") 29:8–30:1).)  The plaintiff maintains that the bags of marijuana were not discovered until after he was brought back to the police station.  (PSUMF ¶ 5 (citing Deposition of John Booker, Dec. 30, 2014 ("Plaintiff Dep.") 13:4–7).)  The defendants assert that the plaintiff was placed under arrest for two reasons: (1) because of the marijuana and (2) because the robbery victim was transported to the scene and identified the plaintiff as the robber.  (DSUMF ¶ 6 (citing Prior Dep. 29:8–30:7).)  According to the plaintiff, however, the robbery victim only "pointed" and "nodded yes" at the plaintiff, while sitting in the back of Officer Alivera and Officer Luciano's patrol car, and no evidence has been provided to establish what Alivera and Luciano said to the victim that prompted his gestures. (PSUMF ¶ 6 (citing Plaintiff Dep. 12:5–9; Prior Dep. 30:1–7).)

---

[2] The plaintiff asserts that he told Officer Prior that he was wearing an ankle monitor prior to being frisked.  (PSUMF ¶ 4.)

After the robbery victim pointed to the plaintiff, Alivera decided to open the hood of the plaintiff's vehicle.  (DSUMF ¶ 7.)  Alivera said that he opened the hood to check the vehicle identification number ("VIN").  (DSUMF ¶ 8 (citing Prior Dep. 52:10–23).)  After opening the hood, Alivera saw a black revolver.  (DSUMF ¶ 9.)  Alivera later stated that he "observed a handgun in the air filter of the engine."  (Am. Compl. Ex. F, Search Warrant Affidavit of Probable Cause.)  Officer Prior saw Alivera searching under the hood of the car, and asked Alivera and the other officers at the scene to back away from the car because he wanted to obtain a search warrant before the car was searched.  (PSUMF ¶ 9 (citing Prior Dep. 33:1–16).)

At the time of the plaintiff's arrest, Philadelphia Police Department Directive 92 permitted warrantless searches of vehicles "only when exigent circumstances exist," and stated that a "search warrant must be obtained otherwise."  (DSUMF ¶ 17 (citing Ex. H, Philadelphia Police Department Directive 92 at 4).)  Directive 92 only contains one reference to identifying a VIN, which states that it should be compared to the vehicle registration.  (PSUMF ¶ 17 (citing Ex. H, Directive 92 at 3).)  Officer Prior was trained on, and is familiar with, Directive 92.  (DSUMF ¶ 18 (citing Prior Dep. 65:22–66:1).)  Every recruit in the Philadelphia Police Academy receives at least twenty-four hours of training on searches and seizures, including detailed training on what constitutes probable cause, how warrantless searches are disfavored, and when a vehicle may be searched without a warrant.  (DSUMF ¶ 19 (citing Ex. I, Philadelphia Police Basic Recruit Curriculum at 3, 22–27, 38–39, 61–65, 95, 105, 107, 117).)

Detective Sean Walsh[3] applied for and obtained a search warrant to search the plaintiff's vehicle for firearms and ammunition.  (DSUMF ¶ 11 (citing Ex. B, Affidavit of Sean Walsh, July

---

[3] Detective Sean Walsh was not present when the plaintiff was arrested, and became involved in the case after Alivera opened the hood and saw the gun.  (DSUMF ¶ 10 (citing Affidavit of Detective Sean Walsh, July 6, 2015 ("S. Walsh Aff.") ¶ 8; Deposition of John Booker, Dec. 30, 2014 ("Plaintiff Dep.") 36:20–37:6).)

6, 2015 ("S. Walsh Aff.") ¶ 9; Ex. D, Search Warrant Application).)  The probable cause affidavit in support of the search warrant application relies on Alivera's discovery of the gun under the hood of the car.  (PSUMF ¶¶ 9–12 (citing Ex. J, Search Warrant Application; Ex. K, Probable Cause Affidavit; Ex. N, Statement of Officer Alivera).)  Pursuant to the resulting search, a gun was recovered from the vehicle.  (DSUMF ¶ 12.)  The only gun recovered from the search was the gun initially discovered by Alivera.  (PSUMF ¶ 12 (citing Ex. E, Property Receipt for Gun).)

Detective Sean Walsh also tested baggies that were found on the plaintiff's person during a search incident to arrest, which tested positive for marijuana.[4]  (DSUMF ¶ 13.)  Sergeant Thomas Walsh's involvement was limited to reviewing police paperwork related to the plaintiff's case.  (DSUMF ¶ 16 (citing Ex. G, Deposition of Thomas Walsh, June 5, 2015 ("T. Walsh Dep.") 33:10–13; Plaintiff Dep. 8:21–9:17).)

On April 23, 2010, following a preliminary hearing, a judge held that the charges against the plaintiff should proceed to trial.  (DSUMF ¶ 14.)  During the plaintiff's criminal proceedings, a judge granted his motion to suppress evidence of the gun and dismissed the charges related to the possession of the firearm and the robbery.  (PSUMF ¶ 14 (citing Ex. F, Docket for Initial Criminal Proceedings at 4–5; Ex. G, Docket for Criminal Trial at 5, 9).)  On November 28, 2011, the plaintiff was convicted of illegal drug possession.  (DSUMF ¶ 15.)

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is

---

[4] As stated above, the plaintiff disputes the defendants' assertion that the marijuana was discovered at the scene of the traffic stop.

"material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that shows the absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (internal citation omitted).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations omitted).

The moving party must establish an absence of a genuine issue of material fact, but it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Instead, it can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  The mere existence of some evidence in support of the non-movant is not sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find in the non-movant's favor on that issue.  Anderson, 477 U.S. at 249–50 (internal citations omitted).

III.     DISCUSSION

After careful consideration of the parties' arguments and the evidence in the record, I find that genuine issues of material fact remain with respect to the illegal search claim.  I also find, however, that those factual disputes are not relevant to the claims against Detective Walsh and Sergeant Walsh because of the nature of their involvement in the plaintiff's case, and I therefore find that they are entitled to summary judgment on the plaintiff's illegal search claims against them.[5]  As discussed below, the plaintiff's false arrest and false imprisonment claims are barred by Heck v. Humphrey, and the defendants are therefore entitled to summary judgment on those claims as well.  I also find that Detective Walsh and Sergeant Walsh are entitled to summary judgment as to the plaintiff's due process and equal protection claims in count two, as well as the state law claims in counts three and four.

As for the City of Philadelphia, I first find that it is not entitled to summary judgment on the plaintiff's failure to train claim in count one, and the defendants' motion is denied as to that claim.  I also find, however, that the City is entitled to summary judgment as to all the other claims against it, and its motion is therefore granted with respect to the plaintiff's false arrest and false imprisonment claims in count one and all claims in counts two, three, and four.

A.  **Count One: Plaintiff's Fourth Amendment Claims**

In count one, the plaintiff alleges that the defendants violated his rights under the Fourth Amendment to the United States Constitution.[6]  (Am. Compl. at Preliminary Statement and

---

[5] Because I am granting the defendants' motion for summary judgment as to the federal claims against Detective Walsh and Sergeant Walsh, I do not address their assertion that they would be entitled to qualified immunity.

[6] "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law."  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (internal citations omitted).  Here, the plaintiff asserts claims for an illegal search, false

Count One.)  With respect to Detective Sean Walsh, the plaintiff alleges that the detective knew that Alivera had searched the plaintiff's car without a warrant, but nonetheless used the illegally obtained evidence of the gun as probable cause for obtaining a search warrant.  (Am. Compl. ¶¶ 40–41.)  With respect to Sergeant Thomas Walsh, the plaintiff alleges that he approved the complaint prepared by Detective Sean Walsh, even though he knew that the plaintiff's rights had been violated.  (Id. ¶41.)  With respect to the City of Philadelphia, he alleges that the City acted with deliberate indifference by failing to train its officers.  (Id. ¶¶ 8–9.)

I will first address the plaintiff's false imprisonment and false arrest claims, followed by a discussion of his illegal search claim and whether there can be municipal liability for that claim.

### 1.  False Imprisonment and False Arrest

The defendants argue that the plaintiff's § 1983 claims for false arrest and false imprisonment are barred by Heck v. Humphrey.[7]  (Defs.' Mem. Supp. Mot. Summ. J. 10.)  In Heck v. Humphrey, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages

imprisonment, and false arrest, in violation of the Fourth Amendment to the United States Constitution.  (See Am. Compl. at Preliminary Statement, Count I; Am. Compl. ¶ 44.)  Specifically, he alleges that the officers illegally detained him, unlawfully searched his car without a warrant, and arrested him under circumstances constituting a false arrest.  (Am. Compl. ¶¶ 20–44.)  The defendants were acting under color of state law during their encounter with the plaintiff and during the alleged violations of his Fourth Amendment rights.  Thus, the threshold requirements for stating a civil rights claim for Fourth Amendment violations are satisfied.

[7] The plaintiff makes no argument in response to the defendants' assertion that the Heck bar applies to his false arrest and false imprisonment claims.

> bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. 477, 486–87 (1994) (emphasis in original).

In this case, the parties dispute the facts surrounding the plaintiff's arrest and the discovery of the marijuana that led to his conviction for illegal drug possession.  The plaintiff alleges that, under his version of the facts, his arrest, detention, and conviction were unlawful.  Thus, the plaintiff's allegations call into question the legality of that arrest and his subsequent conviction.  As the plaintiff's conviction for illegal drug possession has not been reversed, expunged, or otherwise called into question or declared invalid, the principles set forth in Heck apply to bar these claims.  Accordingly, the defendants are entitled to summary judgment as to the false arrest and false imprisonment claims in count one.[8]

### 2.   **The Search of the Plaintiff's Car**

The resolution of the plaintiff's illegal search claim against Detective Walsh and Sergeant Walsh first requires a discussion of whether Alivera conducted a "search" when he lifted the hood of the car, and if he did, whether the warrantless search was nonetheless permissible pursuant to the automobile exception to the warrant requirement; and second, whether Detective

---

[8] The defendants also argue that the plaintiff's false arrest and false imprisonment claims against Detective Walsh and Sergeant Walsh fail as a matter of law because neither officer was personally involved in the plaintiff's arrest.  (Defs.' Mem. Supp. Mot. Summ. J. 9 (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).)  The Third Circuit has held that "a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.'"  Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga, 806 F.3d at 222 (citing Rode, 845 F.2d at 1207).  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n. 6).  Because I find that the false arrest and false imprisonment claims are barred by Heck v. Humphrey, I do not address the merits of the defendants' argument.

Sean Walsh and Sergeant Thomas Walsh had sufficient personal involvement in the application for the search warrant and approval of paperwork such that they could be found liable for any violation of the plaintiff's Fourth Amendment rights.

### a. Whether Alivera Conducted an Impermissible Warrantless Search

The defendants first assert that Alivera did not "search" the plaintiff's vehicle when he looked under the hood to identify the VIN.  (Defs.' Mem. Supp. Mot. Summ. J. 4.)  In support, the defendants rely on case law from outside this circuit, which predates United States Supreme Court and Third Circuit precedent regarding automobile searches and the specifics of whether a warrant is required and under what circumstances.[9]  By contrast, the plaintiff relies on a case from this district where the court found that lifting the hood of a car to look for a VIN was a search and, because the officers did not have probable cause to conduct the search, the plaintiffs' Fourth Amendment rights were violated.  See Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 355–56 (E.D. Pa. 2006) (finding that "[t]he officers did not have probable cause to search under the hood, nor did they have probable cause to arrest [the plaintiffs]. Therefore, the officers violated [their] Fourth Amendment right to free from unreasonable searches when the officers

---

[9] The cases relied on by the defendants are from the Fifth Circuit and the Eighth Circuit. The Fifth Circuit found that "the VIN on the rear axle or on the car frame are outside any reasonable expectations of privacy.  Those that may be seen only by opening the car door or hood are no more private: doors and hoods are continually opened to the eyes of observers. Although opening the door of a car may involve a technical trespass, such action does not invade any expectations of privacy."  United States v. Polk, 433 F.2d 644, 647–48 (5th Cir. 1970).  The Eighth Circuit held that "no unreasonable search or seizure occurred when the DEA agents simply transcribed into a permanent form serial numbers of currency which they had already lawfully observed" and cited Polk in in a footnote in support.  United States v. Lacey, 530 F.2d 821, 825 (8th Cir. 1976); see also id. at 825 n.5 (reasoning that "[t]he viewing of the serial numbers in the present case, while accomplished pursuant to an inventory procedure, is more analogous to an identification of an automobile than a search of its contents" and listing cases where courts found that officers did not conduct "searches" by looking for identification numbers).

looked under the hood of the car.").[10]  The court noted that "[o]nce the stop was effectuated and [the plaintiffs] were handcuffed and under the officers' control, the officers had several options, none of which included the authority to search the vehicle without a warrant."  Id. at 355.  Like the officers in Glass, Alivera conducted a "search" when he lifted the hood of the vehicle to look for the VIN.  Because I find that a warrantless search was conducted when Alivera looked under the hood of the car, I will next consider whether the search fell under the automobile exception to the warrant requirement.[11]

**b.  Whether the Warrantless Search was Permissible Pursuant to the Automobile Exception**

"The automobile exception permits vehicle searches without a warrant if there is probable cause to believe that the vehicle contains evidence of a crime."  United States v. Donahue, 764 F.3d 293, 299–300 (3d Cir. 2014) (internal quotation marks and citation omitted).  "The government bears the burden of establishing the applicability of the exception [. . .] by a preponderance of the evidence."  Id. at 300 (citations omitted).  The automobile exception has two elements: "[f]irst, if probable cause justifies the search . . . , it justifies the search of every part of the vehicle and its contents that may conceal the object of the search;" and [s]econd,

---

[10] The court's finding in Glass is consistent with United States Supreme Court precedent. In New York v. Class, the Court held that an officer did not "search" a vehicle when he reached into the car to move papers that were obscuring the VIN located on a vehicle's dashboard that would otherwise have been in plain view.  See N.Y. v. Class, 475 U.S. 106, 118–119 (1986) (reasoning that "[t]he VIN, which was the clear initial objective of the officer, is by law present in one of two locations—either inside the doorjamb, or atop the dashboard and thus ordinarily in plain view of someone outside the automobile.  Neither of those locations is subject to a reasonable expectation of privacy.  The officer here checked both those locations, and only those two locations.").  The Court further noted that their holding "does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile.  If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it."  Id. at 119.

[11] The defendants do not argue that Alivera was conducting a search incident to arrest or an inventory search when he looked under the hood of the car.

probable cause does not dissipate after the automobile is immobilized because the exception does not include an exigency component." Id. (citing United States v. Ross, 456 U.S. 798, 825 (1982); Maryland v. Dyson, 527 U.S. 465, 466 (1999)) (internal quotation marks omitted). "If there was a 'fair probability that contraband or evidence of a crime' would have been found, there was probable cause for the search." Donahue, 764 F.3d at 301 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

"Although the probable cause inquiry is usually a question for the jury, 'where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate.'" Stetser v. Jinks, 572 F. App'x 85, 87 (3d Cir. 2014) (quoting Sharrar, 128 F.3d at 818 (citation omitted)); see also Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788–89 (3d Cir. 2000) ("[A] district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly.") (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Here, therefore, the question is whether there was probable cause for Alivera to search under the hood for evidence of robbery or drug offenses. In this case, there are genuine issues of material fact, as well as credibility conflicts, which would require the probable cause inquiry to be presented to a jury. First, the parties dispute whether the robbery victim identified the plaintiff when he was brought to the scene of the traffic stop. Second, the parties disagree about when the police discovered that the plaintiff was in possession of marijuana—before his arrest and placement into Officer Prior's vehicle, or after he was at the station for processing. In light of these factual disputes, I cannot determine whether Alivera had probable cause to believe that the car contained evidence of robbery or drug offenses without weighing those disputes and

making credibility determinations.  I therefore cannot determine whether the search of the plaintiff's vehicle that occurred when Alivera looked under the hood was constitutionally permissible pursuant to the automobile exception.

As previously stated, Alivera is not a party to the defendants' summary judgment motion, and I do not resolve the claims against him in this Memorandum.  Nonetheless, the above discussion regarding the search of the plaintiff's vehicle and the probable cause dispute relates to the summary judgment analysis of the claims against Detective Walsh and Sergeant Walsh, as well as the failure to train claim against the City.

### c.  Detective Walsh's Preparation of the Search Warrant

The plaintiff alleged that Detective Walsh knew Alivera had searched the plaintiff's car without a warrant, but nonetheless relied on the illegally obtained evidence of the gun as probable cause for obtaining a search warrant.  As discussed above, I cannot determine whether there was probable cause to conduct a search of the plaintiff's vehicle pursuant to the automobile exception.  That does not, however, preclude my finding that Detective Walsh did not violate the plaintiff's Fourth Amendment rights when he applied for a search warrant based on officer statements about what happened at the scene.  According to the investigation interview record and the affidavit of probable cause, Detective Walsh was told that the victim made a positive identification of the plaintiff and that officers at the scene conducted further investigation of the vehicle after the identification occurred.  (See Pl.'s Resp. Opp'n Ex. N; Ex. J.)  The record evidence, therefore, does not establish that Detective Walsh violated the plaintiff's Fourth Amendment rights by preparing a search warrant application and case paperwork based on

information provided by officers at the scene.[12]  The defendants' motion for summary judgment

is therefore granted with respect to the plaintiff's illegal search claim against Detective Walsh.

### d.   Sergeant Walsh's Approval of the Complaint

As to Sergeant Thomas Walsh, the plaintiff alleges that he approved the complaint

prepared by Detective Walsh even though he knew that the plaintiff's rights had been violated.

The plaintiff has not identified any record evidence to support his claim that Sergeant Walsh

knew that his rights had been violated, or that he was involved in the case beyond approving a

form that was prepared by Detective Walsh.  The United States Supreme Court has made clear

that "[g]overnment officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior."  Argueta v. U.S. Immigration & Customs

Enforcement, 643 F.3d 60, 71 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 676 (internal citations

omitted)).  Thus, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution."  Id.  Allowing the claim against Sergeant

Walsh to proceed to trial solely on the basis of his approval of a form prepared by another officer

would be to allow an impermissible claim of supervisory liability to go forward.  Accordingly,

---

[12] I note that, where an officer has established probable cause, he is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000) (citation omitted); see also Davis v. Malitzki, 451 F. App'x 228, 233 (3d Cir. 2011) ("[E]vidence that might exonerate a defendant does not defeat probable cause."); cf. Livingston v. Allegheny Cty., 400 F. App'x 659, 665 (3d Cir. 2010) (stating that for probable cause "the proper inquiry is whether 'the facts and circumstances *within the arresting officer's knowledge*' were sufficient to warrant a reasonable belief that the offense was committed.") (emphasis in original) (quoting Merkle, 211 F.3d at 788).  Thus, the fact that the plaintiff now disputes that Alivera had probable cause to search the car based on the purported identification from the robbery victim does not undermine Detective Walsh's belief that, based on what he had learned from the officers at the scene, there was probable cause to support the search warrant application.

the defendants' motion for summary judgment on count one is granted with respect to Sergeant Thomas Walsh.

**e.  Municipal Liability**[13]

"[Third Circuit] jurisprudence is clear that when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom."  McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (internal citations and quotations omitted); see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997) (stating that "a plaintiff seeking to impose liability on a municipality under § 1983" must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.") (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978); Pembaur v. Cincinnati, 475 U.S. 469, 480–81 (1986); City of Canton v. Harris, 489 U.S. 378, 389 (1989)).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011).

In this case, the plaintiff alleges that the City had "a policy, or practice and custom responsible" for the alleged violations of his constitutional rights and acted with deliberate indifference in failing to train or supervise its officers.[14]  (Am. Compl. ¶¶ 8–9.)  Specifically, he

---

[13] As stated above, the plaintiff's claims for false arrest and false imprisonment are not cognizable because they are barred by Heck v. Humphrey.  I will therefore only address the plaintiff's allegations that the City of Philadelphia is liable for the officers' alleged violations of his rights with respect to his illegal search claim.

[14] The wording in the amended complaint could be read as asserting multiple types of municipal liability claims, but the plaintiff's argument in support of his claim against the City is

asserts that the City of Philadelphia failed to properly train its police officers on performing a

VIN search without violating the Fourth Amendment.  (Pl.'s Mem. Supp. Mot. Summ. J. 11.)

For the reasons that follow, I will deny the defendants' motion for summary judgment as to the

failure to train claim.

### 1. **Failure to Train**

The Supreme Court has stated that "a municipality's failure to train its employees in a

relevant respect must amount to 'deliberate indifference to the rights of persons with whom the

[untrained employees] come into contact.'"  Connick, 131 S. Ct. at 1359 (quoting Canton, 489

U.S. 378, 388, (1989).  "Only then 'can such a shortcoming be properly thought of as a city

'policy or custom' that is actionable under § 1983.'"  Id. at 1359–60 (quoting Canton, 489 U.S.

at 389).  In order to show deliberate indifference, a failure to train claim "typically requires proof

of a pattern of underlying constitutional violations."  Carswell v. Borough of Homestead, 381

F.3d 235, 244 (3d Cir. 2004) (citing Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.

2000)).  "Although it is possible, proving deliberate indifference in the absence of such a pattern

is a difficult task."  Carswell, 381 F.3d at 244 (citing Berg, 219 F.3d at 276).

"To satisfy the deliberate indifference standard, [plaintiffs] must present evidence that

shows both: (1) knowledge that a federally protected right is substantially likely to be violated . .

. , and (2) failure to act despite that knowledge."  Id. at 265 (internal citation omitted).  "Thus,

when city policymakers are on actual or constructive notice that a particular omission in their

training program causes city employees to violate citizens' constitutional rights, the city may be

deemed deliberately indifferent if the policymakers choose to retain that program."  Connick,

131 S. Ct. at 1360 (internal citation omitted).  Courts should be "careful not to impose liability

only based on an alleged failure to properly train officers on performing VIN searches.  I will
therefore analyze his claim only as a failure to train claim.

merely because municipal training *could* have been more thorough or comprehensive—that question will almost always be answered in the affirmative.  Rather the question is whether the training *should* have been more thorough or comprehensive, an inquiry that focuses on the deliberate indifference standard."  Murray v. City of Phila., No. Civ.A. 11-6900, 2014 WL 3765451, at *4 (E.D. Pa. July 31, 2014) (emphasis in original) (citing Canton, 489 U.S. at 392); see also Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (holding that, under the deliberate indifference standard, "[i]t is not sufficient that the official should have known of the risk").

The defendants assert that the plaintiff's claim fails because he has not produced any evidence that other officers have opened the hood of a car to look for VINs.  (Defs.' Mem. Supp. Mot. Summ. J. 7.)  As discussed above, however, the City of Philadelphia has previously been sued for a violation of Fourth Amendment rights based on a warrantless search for a VIN under the hood of a car.  The court in that case held that, because the officers did not have probable cause to search under the hood, they violated the plaintiffs' Fourth Amendment right to free from unreasonable searches.  Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 355–56 (E.D. Pa. 2006).  Thus, the City had actual knowledge as of 2006—four years before this plaintiff's arrest in 2010—that a federal court in this district had held that a warrantless search for a VIN under the hood of a car was unconstitutional.[15]

---

[15] The defendants assert that no reasonable jury could find in the plaintiff's favor because "many" courts have held that looking for a VIN is not a search.  (Defs.' Mem. Supp. Mot. Summ. J. 7–8.)  The cases that the defendants rely on are from the Fifth Circuit, in 1970, and the Eighth Circuit, in 1976.  By contrast, in a more recent case, the United States Supreme Court indicated that entering the passenger compartment of a vehicle to see a VIN that was otherwise in plain view would not be authorized.  See N.Y. v. Class, 475 U.S. 106, 118–119 (1986) (stating that their holding regarding an officer moving papers to see the dashboard VIN "does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile.  If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it.")  By that reasoning, Alivera was not authorized to open the hood to look for the VIN if he could have observed it through the window on the dashboard or on the inside of the door.

In spite of this, the record evidence does not indicate that the City adjusted its training or provided additional officer training on how to identify a VIN without violating the Fourth Amendment.[16]  A reasonable jury could find that this constitutes a "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees [that] may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.'" Connick, 131 S. Ct. at 1360 (internal citation omitted).

"In addition to proving deliberate indifference, a plaintiff must also demonstrate that the inadequate training caused a constitutional violation."  Carswell, 381 F.3d at 244 (citing Grazier v. City of Phila., 328 F.3d 120, 124–25 (3d Cir. 2003)).  "There must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"  Carswell, 381 F.3d at 244–45 (quoting Brown v. Muhlenberg Township, 269 F.3d 205, 214 (3d Cir. 2001); City of Canton, 489 U.S. at 385)).

The defendants argue that the plaintiff cannot show that the City's training actually caused a constitutional harm, because (1) all recruits receive at least twenty-four hours of training on searches and seizures, including when vehicles may be searched without a warrant; and (2) Directive 92 limits warrantless vehicle searches by more than what the Constitution requires.  (Defs.' Mem. Supp. Mot. Summ. J. 5–6.)  These arguments overlook the essence of the

---

Moreover, the defendants' argument, in addition to relying on non-binding case law from outside this circuit, ignores the fact that a federal court in Philadelphia, in a case in which the City was a defendant, has held that looking for a VIN under the hood is a search, and that, when conducted without a warrant and in the absence of any exception to the warrant requirement, such a search is unconstitutional.  See Glass, 455 F. Supp. 2d at 355–56.

[16] The plaintiff argues that the absence of any evidence regarding an actual VIN policy indicates that the City never provided training on the constitutional limits of identifying and/or searching for a VIN.  (Id. at 13.)  He also asserts that the defendants have failed to produce a VIN policy during discovery, and that it will move for an adverse inference instruction at the appropriate time.  (Pl.'s Resp. Opp'n 12–13.)

plaintiff's claim, which is that additional training specific to VIN identification and its relation to search and seizure law should have been provided to recruits and/or officers.  According to the defendants, however, the fact that Directive 92 prohibits warrantless vehicle searches in the absence of exigent circumstances means that the plaintiff cannot argue that the City's training "actually caused" Alivera to search under the hood of the car.  (Id. at 6 n.3.)  Again, this argument ignores the fact that part of the plaintiff's failure to train claim rests on the premise that if the City had provided appropriate VIN training, Alivera would not have violated the plaintiff's Fourth Amendment rights by looking for the VIN under the hood instead of in another location. Alivera's failure to adhere to Directive 92 does not compel the conclusion that a failure to train on the intersection of VIN identification procedures and the constitutional limits on vehicle searches did not cause the violation of the plaintiff's rights.  As the plaintiff points out, Officer Prior's deposition testimony supports the plaintiff's assertion that there was a gap between training on VIN identification and training on search and seizure law.[17]

Under the circumstances of this case, and in light of the Glass court's holding regarding a VIN search in a case against the City of Philadelphia, it is possible that a reasonable jury could find that the VIN training should have been more thorough in order to prevent the constitutional violation alleged here, and that the failure to train caused the alleged violation of the plaintiff's Fourth Amendment rights.  I will therefore deny the defendants' motion for summary judgment as to the failure to train claim against the City.

---

[17] For example, Officer Prior testified that it was his understanding that there had not been instructions not to look for the VIN under the hood of a vehicle, as opposed to through the windshield or on the door.  (Prior Dep. 54:24–55:14.)  He also testified that he did not think there was a procedure as far as what order to look in with respect to the places where a VIN is located. (Prior Dep. 24:16–18.)

B. **Count Two: Plaintiff's Fourteenth Amendment Due Process and Equal Protection Claim**

In count two, the plaintiff asserts due process and equal protection claims against the City of Philadelphia as well as the individual defendants.  (See Am. Compl. at Preliminary Statement, Count II.)  The defendants argue that the plaintiff has not shown that he was treated differently than a "similarly situated" person, nor has he explained in what way his substantive due process rights were violated in a way that "shocks the conscience."  (Defs.' Mem. Supp. Mot. Summ. J. 11 (citing Starzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008); Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).)  The defendants also argue that there is no evidence in the record that could support a procedural due process claim against Detective Walsh or Sergeant Walsh. (Id.)  The plaintiff does not make any argument in response.  Because the plaintiff does not explain the basis for the Fourteenth Amendment claims set forth in the amended complaint, nor point to any evidence in support of those claims, the defendants are entitled to summary judgment.  Thus, the defendants' motion is granted with respect to count two.

C. **Count Three: Plaintiff's Claim Pursuant to Article I, Section 8 of the Pennsylvania Constitution**

In count three, the plaintiff alleges that the defendants violated his rights under Article I, Section 8 of the Pennsylvania Constitution.  (Am. Compl. ¶ 50.)  Numerous courts have found that there is no private right of action for monetary damages under the Pennsylvania Constitution.  See, e.g., Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")).  Thus, the defendants are entitled to summary judgment on count three.

19

**D.** **Count Four: Plaintiff's Intentional Tort Claim Pursuant to 42 Pa. C.S. 8550**

Count four of the amended complaint sets forth a claim for "Intentional Tort (Willful Misconduct)" pursuant to the Pennsylvania Political Subdivision Tort Claims Act for violations of his federal and state constitutional rights. (Am. Compl. at Count Four and ¶ 52.) The plaintiff asserts this claim against the City of Philadelphia as well as the individual police officers.

"In general, the Tort Claims Act provides immunity to the municipality and its agencies and employees." Gremo v. Karlin, 363 F. Supp. 2d 771, 792 (E.D. Pa. 2005). There are, however, exceptions to that general grant of immunity. These exceptions apply differently to municipalities and individual employees.

**1.** **The Plaintiff's Tort Claim Against the City of Philadelphia**

The Tort Claims Act states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. "[T]he City of Philadelphia is a 'local agency' and therefore covered by the Act's immunity provisions." Panas v. City of Phila., 871 F. Supp. 2d 370, 376 (E.D. Pa. 2012) (citations omitted). Section 8542 of the Tort Claims Act provides that a plaintiff may bring a claim against a local governmental agency if (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories. See 42 Pa. Cons. Stat. § 8542(a). Notably, "'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C. S. § 8542(a)(2); see also Panas, 871 F. Supp. 2d at 375–76 (citing Thomas v. Cianfrani, No. 01–3096, 2009 WL 1704471, at *4–5 (E.D.

Pa. June 17, 2009); Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 719 (E.D. Pa. 2007);

Holmes v. City of Phila., No. 05–2909, 2005 WL 1875524, at *3 (E.D. Pa. Aug. 4, 2005)).  Here,

the plaintiff bases his claim on the alleged willful misconduct of certain individual officers.

Thus, the plaintiff's claim against the City of Philadelphia fails as a matter of law because the

immunity exceptions expressly rule out such claims.  Accordingly, the City of Philadelphia is

entitled to summary judgment on count four.

### 2.   The Plaintiff's Claim Against the Individual Officers

The plaintiff appears to assert the same violations in count four as in count one—that he

was subjected to an illegal search, false arrest, and false imprisonment—and that the individual

defendants "knowingly, wantonly, and intentionally acted with deliberate indifference, malicious

intent and disregard" for his rights.  (Am. Compl. ¶ 52.)  As noted above, Detective Walsh and

Sergeant Walsh only became involved in the plaintiff's case after he had already been arrested.

They therefore could not have acted in a manner constituting willful misconduct for purposes of

the plaintiff's false arrest and false imprisonment claims, and they are entitled to summary

judgment as to those aspects of the plaintiff's state law intentional tort claim.  For the reasons

discussed below, I will also grant the defendants' motion for summary judgment on count four

with respect to the search of the plaintiff's vehicle.

"In any action against a local agency or employee thereof for damages on account of an

injury caused by the act of the employee in which it is judicially determined that the act of the

employee caused the injury and that such act constituted a crime, actual fraud, actual malice or

willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546

(relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to

limitation on damages) shall not apply."  42 Pa. C. S. 8550.  "In order to exclude police officers

from the protection of immunity under the Tort Claims Act, the police officer's 'willful misconduct' must be established in addition to the elements of an intentional tort." <u>Gremo</u>, 363 F. Supp. 2d at 793 (citing <u>Renk v. Pittsburgh</u>, 641 A.2d 289, 293–94 (Pa. 1994)). "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" <u>Sanford v. Stiles</u>, 456 F.3d 298, 315 (3d Cir. 2006) (quoting <u>Renk</u>, 641 A.2d at 293 (citations omitted)). "The conduct of a police officer will only constitute 'willful misconduct' if the officer committed 'misconduct which the perpetrator recognized as misconduct and which was carried out with the intention of achieving exactly that wrongful purpose.'" <u>Waldon v. Borough of Upper Darby</u>, 77 F. Supp. 2d 655, 658 (E.D. Pa. 1999) (quoting <u>In re City of Philadelphia Litigation</u>, 938 F. Supp. 1264, 1273 (E.D. Pa. 1996) (additional citations omitted)).

      With respect to Detective Walsh, the plaintiff alleged that

> After being given knowledge and notice of the illegal nature in which the car Plaintiff was driving was searched without a warrant, Defendant Det. Walsh still continued to proceed forward with his reports and efforts to secure a search warrant of the car Plaintiff was driving.

(Am. Compl. ¶ 40.)  As discussed above, Detective Walsh received information from officers who had been at the scene that supported his determination that there was probable cause to support the search warrant application.  He therefore cannot have acted with the intent of achieving a wrongful purpose, and did not act in a manner constituting willful misconduct.

      With respect to Sergeant Walsh, the plaintiff alleged that, "with knowledge and notice of the above violations[,] [Sergeant Walsh] still participated in the violations of Plaintiff's rights by approving the complaint prepared by Defendant Det. Walsh."  (Am. Compl. ¶ 41.)  The

plaintiff's arrest and the application for the search warrant occurred on January 29, 2010. Sergeant Walsh did not review the report prepared by Detective Walsh until after its completion on February 11, 2010.  There is no record evidence to indicate that Sergeant Walsh's approval of the report was anything other than procedural or that, by approving the report, Sergeant Walsh intended to do something wrongful.[18]  For these reasons, I will grant the defendants' motion for summary judgment with respect to Sergeant Walsh.

## IV.  CONCLUSION

In light of the foregoing, I find that the City is not entitled to summary judgment on the plaintiff's failure to train claim with respect to the warrantless search of his vehicle, but that the City, Detective Walsh, and Sergeant Walsh are entitled to summary judgment as to all of the plaintiff's other claims.  The defendants' motion for summary judgment is therefore granted in part and denied in part.

An appropriate Order follows.

---

[18] The investigation report indicates that Detective Walsh completed the report at 4:41 p.m. on February 11, 2010, and that Sergeant Walsh approved it approximately three hours later, at 7:31 p.m.  (Am. Compl. Ex. H, Investigation Report.)  Nothing about the report indicates that Sergeant Walsh was involved in its preparation, or that he contributed to the alleged violations of the plaintiff's constitutional rights.